Nokris, J.
At the November term, 1896, of the court of common jpleas of this county, an action was pending wherein the de *638 fendant in error, Wm. G. Fee, was plaintiff, and E. D'.. Miller, E. 0. Talmage and 0. E. Russell were defendants. Ancillary to this suit a writ of attachment issued against Miller, Talmage & Russell and the plaintiff in error, The' Buckeye Pipe Line Company, was made garnishee, and was served with notice in garnishment, and was required to> answer,and did answer as garnishee. Afterward,by the consideration of said court, defendant in error recovered a judgment against Miller, Talmage & Russell, .and the court' ordered the Pipe Line Company, as garnishee, to turn over' to the sheriff of this county certain crude petroleum, found-by the court to be the property of Miller, Talmage & Russell and in the possession and in the control of the garnishee,, in such amount that the avails might satisfy the judgment- and costs. This order the Pipe Line Co. refused to obey,., and failed to turn over to the sheriff any of the oil so found to be in its custody and possession. And the controversy' which this court is now called upon to review, is the action* brought by Fee, the defendant in error,against the plaintiff' in error, The Buckeye Pipe Line Company, to recover the: amount of that judgment.
That it had in its possession and under its control at said time certain oil of Miller, Talmage & Russell; that the judgment was recovered and the order made, and that it refused to obey the order, The Pipe Line Company does not deny; but it claims immunity from liability from the following facts which the parties agree was' the true condition that obtained when the action between Fee, and Miller, Talmage & Russell was commenced and when the proceedings in garnishment were sought to be enforced by the order of the court in that action; and upon these facts, as thus-, agreed, the ease was submitted to the court of common pleas of this county.
The facts are as follows: The Buckeye Pipe Line Company is an Ohio corporation; its business is confined ta *639 «that of a common carrier and storef of oil; its principal ■office is at Lima, Ohio, where the books of its business .are kept. On the 7th of November, 1896, it had in its .possession and under its control 1086.04 barrels of oil ito the credit of Miller, Talmage & Russell, a firm com,posed of the defendants against whom Fee’s action was .pending, and against whom he .recovered the judgment, and ’■the value of the oil was sufficient to satisfy the judgment. The oil was produced in Huntington county, Indiana, and re-ceived by the company in Indiana in its usual course of business, and held by the company as common carrier and storer of oil, and never was in Ohio; no Indiana oil is carried tinto or stored in Ohio by said company.
The oil territory of Indiana,including Huntington county, and ■ the oil territory in north-western Ohio, including .Allen county, Ohio, comprise the territory known as the Lima Division of said company; its stations for the delivery ■of oil are in this territory in both Indiana and Ohio, including said counties of Allen and Huntington, and all transfers of oil are made on its books at Lima. Its system of storage and pipe lines in Indiana are not connected with its Ohio -«system of storage and pipe lines; the oil received in Indiana cannot be delivered through its pipes in Ohio, but is delivered in Indiana. The oil produced in Indiana is of a different kind and quality from that produced in Ohio, and generally of a different market value; but since January, 1896, the value of Indiana oil and oil produced in Allen county, Ohio, has been and is the same. Oil received and -stored in Indiana from different wells and delivered by different persons to the Pipe Line Company, is mingled, so that the identical oil cannot be returned, but oil of like' kind and quality is delivered from the general stock of the com:pany in Indiana.
The oil in custody was received on a “run ticket”; •-.amongst the conditions of the contract upon which it was *640 thus received is: “That the oil is received into the general stock of the Buckeye Pipe Line Company, 'Lima Division, subject to certain transportation and storage charges; and that the point of delivery by the company shall be at the option of the company, within the Lima Division. That the company shall not be liable for loss resulting from unavoidable causes; and that all losses from such causes shall be charged pro rata upon all petroleum in its custody, Lima Division, at the time of loss, and the quantity represented by the Run Ticket shall be reduced by its proportion of loss. ’ ’
It is agreed that the company had a right to deliver the oil in controversy at any of its delivery stations in Indiana. It is further conceded as a fact, that when oil is sold by a person who has oil stored, it is transferred upon the books of the company, Lima Division, at Lima; that there is constant market for Indiana and other oil in the company’s custody, and that all oil sold is at once transferred to the credit of the purchaser upon presentation of the purchase order, at any of its offices, and report of that fact by the company’s agent to the Lima office.
The owner of oil, or the purchaser, can secure the delivery of the actual oil belonging to him, upon demand and payment of charges, and such deliveries are being constantly made.
The sheriff did not seize the oil in controversy; the attachment was served in no other way than by leaving a copy of the attachment with the agent of the company at Lima, Ohio, and informing him of the contents thereof.
A copy of the sheriff’s return is embodied in the agreed statement of facts which, aside from other considerations, as far as form and manner is concerned, would indicate a proper service.
In a case pending in the Circuit Court of Huntington county, Indiana,after January 1,1897, that court, which is a court of competent jurisdiction, appointed a receiver for *641 Miller, Talmage & Russell, and directed the plaintiff in error to deliver the oil in controversy to said receiver.
The company has a lien on this oil for transportation and storage charges. Since the order and judgment recovered by Fee against Miller, Talmage & Russell, the plaintiff, through the sheriff of this county, had made demand upon the company for the oil in controversy, which has been refused and the oil never delivered. These are the agreed facts presented by the bill- of exceptions, and upon the condition disclosed by them the plaintiff in error, defendant below,asserts that it was in no wise bound to obey the order of the common pleas; that it has the right of the controversy, and that Fee has no ground of recovery in this action.
In the common pleas, a jury being waived, the case was ■submitted to the court; the result was a finding for the plaintiff below against the defendant, The Pipe Line Company. Defendant’s motion for a new trial was overruled, and judgment was entered upon the finding of the court; and to reverse that proceeding this case in error is prosecuted.
The ground assigned in the motion for a new trial is, that the judgment is not sustained by sufficient evidence, and is contrary to law.
The reason for reversal assigned in the petition in error is,that the court erred in rendering judgment for the plaintiff against the defendant, and erred in overruling the motion for a new trial.
A verdict, is the conclusion of a jury, upon issues of fact submitted to the jury in an action.
' A finding, in the sense used in this case, is the conclusion of the court, upon issues of fact presented to the court in an action, In each case, whether a verdict or a finding, it is the decision of what the facts determine.
A judgment, is the final adjudication of the rights of the parties to a controversy. A judgment is what the law de *642 dares shall be done; it is the award based upon the finding. It is the act of the court, warranted by the law,and conclusive' between the parties to the suit, because it is founded upon the decision of what the facts determine.
In order to review a case — as the one at bar — upon the evidence, the objection must be made to the finding of the court, that it is not supported by the evidence; that the de-cision of the court, as to what the facts determine, is not warranted by the evidence.
This reason for a new trial, must be assigned in the motion for new trial, in order to bring the evidence in' the record up for review in that regard. The objection in this case is, that the judgment is not sustained by sufficient evidence. To thus attack the judgment without objecting to the finding upon which it is based, does not appear to be such an assignment of error as will bring the evidence in the record up for review when such motion is overruled. See 17 Ohio St., 262; 384; 14 Ohio St., 272-276; 32 Ohio St., 562.
But passing this point, for it may be, and probably is, when taking into account the learning and care and skill of plaintiff’s counsel, that the omission to make objection to the finding was a clerical error.
It is claimed that the property which was subject of garnishment, not being in the strict sense a credit; and the identical oil in controversy never having been seized by the officer, and never having been in this state, but always 'having been in the state of Indiana, renders it impossible that jurisdiction by the proceedings in attachment and .garnishment can be acquired here; and hence, that recovery can not be had. That the proceedings being in rem, the jurisdiction is governed by the situs of the property.
In most instances this is true; the situs of personal property is,for most purposes,the domicile of the owner, because it is deemed to be attached to his person. But,say the courts, *643 the law for attaching property of non-residents, necessarily assumes that the property has a situs distinct from the ■owner’s domicile. Wherever the owner may maintain a suit to recover the property, if the grounds exist, the property may be attached as his property. And this probably would ■ determine the situs of the property in controversy in this case.'
It is conceded that when the oil of Miller, Talmage & Russell, went into the possession and custody of the Buck■eye Pipe Line Company, it lost its identity; it was no •longer susceptible of separation or seizure; it became, and -was, a part of the common stock of oil of the Buckeye Pipe Line Company, Lima-Division.
The Indiana oil, and Ohio oil, is conceded to be of different quality; yet this is a fiction that cuts little figure, when faced by the facts that the oil in both fields was of the .same market value; that is was optional with the company to deliver oil represented by its run tickets, either in Ohio ■or Indiana, no matter in which field produced; and, that the Indiana and Ohio oil, Lima Division, was taken and considered, and made, a common stock of oil, out of which -this run ticket, or any run ticket, might be paid, by delivery ■of the quantity of oil at any of its stations of the Lima Division. So that this run ticket, represented so much oil ■of a common stock. Miller, Talmage & Russell owned by virtue of it, so many parts of this common stock, and if any of the common stock was destroyed, they lost their •proportion of the common stock thus destroyed, This ownership was in the common stock, and their loss was in the common stock; and they, and other owners of the run tickets of this company, owned all the oil of this common stock. ■ .None of them owned any particular oil, either in Indiana or Ohio; they owned it together, all of it, both in *644 Indiana and Ohio, their interests being defined by their run tickets.
The liability and rights of this garnishee to this attaching creditor, is measured by its liability to Miller, Talmage & Russell. It claims, and has the option, upon demand, to deliver the oil represented by this run ticket, at any of its stations in the Lima Division, as it may determine. But with its common stock as well in Allen county, Ohio, as in Huntington county, Indiana, it makes flat refusal to deliver at all.
Suppose that upon demand, made by Miller, Talmage & Russell, in the absence of that proceeding in garnishment, it refused to deliver the oil represented by this run ticket to Miller, Talmage & Russell; could it be successfully denied that Miller, Talmage & Russell would have a right to recover, against the company, in Alien county, Ohio, their interest in their common stock? We think not. After having refused altogether, could the fact that the company had an option as to where it would deliver, justify a refusal to-deliver at all? And still refusing, would the court consider its option as any longer a right that it might exercise under its contract? We think not.
Under the facts as agreed, we conclude, that the proceedings in attachment and garnishment, clothed Fee with the rights that could have been exercised by Miller, Talmage &- Russell. And a refusal to deliver the oil at all from this-common stock, upon demand of the sheriff, under the order of the court, was a waiver of the company’s right to exercise its option as to the place of delivery; and the property-being part of a common stock, the situs of which was as-well in Allen county, Ohio, as in Huntington county, Indiana, we are of the opinion that the action was properly brought,and jurisdiction properly acquired here.
It is conceded that the attachment in this state issued, and the proceedings in garnishment were had, before the- *645 appointment of the receiver for Miller, Talmage & Russell, by the Circuit Court of Huntington county, Indiana, and before that court took cognizance of the matter. That being the case, the jurisdiction of a court of this state, competent to deal with the controversy, having been first acquired over the property in dispute, such jurisdiction is exclusive. And the order of the Circuit Court of Huntington county, Indiana, upon plaintiff in error, to turn the oil in controversy over to the receiver of that court, is no protection to plaintiff in error,
James O. Troup, for Plaintiff in Error.
William H. Cunningham, for Defendant in Error.
Finding, therefore, no error on the face of the record to the prejudice of the plaintiff in error, the judgment of the common pleas is affirmed, with costs; and the case is re* manded for execution.